Judge Tuckfr.
There are certain principles which, in
my opinion, ought to be always regarded by a Jury, in settling the boundaries mentioned in any grant, patent, or other deed, concerning lands in this country.(a) They arise from a variety of considerations; not only from the variations of the compass, but from old surveys being often very inaccurate; the plats returned being not unfrequently Protractaons upon paper, instead of the result of actual mensuration, and field notes, made upon the spot; lines not unfrequently left out, and the courses of others mistaken by copyists, so that every new conveyance may be the parent of new mistakes ; whereas natural boundaries are, perhaps universally, invariable ; and marked lines and trees, so long as they remain without destruction, or wilful alteration, in general furnish a safer guide than any other, except notorious land-marks established by the hands of nature. According to these principles, regard should always be had to the following circumstances.
1. If a patent or deed refer to any notorious land-marks, or natural boundaries, which cannot be mistaken, and are not liable to change or decay, as the corners or angles of a plat, such notorious land-marks are to be regarded as termini, from whence straight lines are to be run from one to the other, without regard to the correspondence of either course or distance, which may in such cases be mistaken in the deed.
2. If lines and corners be proved to have been actually run, and agreed on as a boundary between parties holding' adjacent lands, those lines and corners are from thence* *131 forth to be regarded as the limits of the possession of each ; and from the period of running such lines, if they continue to he acquiesced in, the acts of limitation may be considered as beginning to run, so as to control the courses and distances mentioned in the deed, by establishing an adversary possession in either party, according to the lines so run.
3. Where, in a grant or deed, courses and distances only are mentioned, beginning from a certain point, but not referring to any certain point for the termination, otherwise than by reference to the distance, according to the course prescribed; in such case, courses and distances, as expressed in the deed, are only to be regarded, unless an actual survey, duly authorized, be proved to have been subsequently made, according to the courses and distances prescribed by the deed-
4. Where courses and distances, with marked lines and corners, are referred to in a deed, in such case lines and corners corresponding most nearly with the courses and distances, lines and corners mentioned in the deed, are to be regarded as the true courses, &c.
5. If partition be made between two joint-tenants, oí tenants in common of land by deed, or by virtue of a decree, if iu the deed or decree it be expressed* that A. shall have all the lands which lie west of a line drawn from one notorious land-mark or natural boundary to another, and B. all that lie east thereof, although this line be never actually run, each is from thenceforth seised of his proper part, according to the true course to be run from one of those points to the other; but if a line be run and marked., by mutual consent or agreement, or by order of Court, and confirmed in the decree, and that decree be acquiesced in, the possession of each commences from that period, acj cording to the line so marked., although that line be ever so erroneous j and the act of limitations may operate upon that possession, so as to render such erroneous line, in process of time, the legal boundary between the parties.
*132 In the present case, the parties claim under a grant from the proprietors of the northern neck, to London Carter and five others, for about 40,000 acres of land, in the year 1724, whereof .partition was made by a decree of the Ge- • neral Court, upon a bill filed, and consent óf parties, its the year 1739. The commissioners, for that purpose 'appointed, made a report, with a survey annexed, made by John Grant, in which, among other things, they say that they have allotted to London Carter, under whom the plaintiff in the ejectment claims, the lot on the plat No. 1. separated (as by the plat appears) from the residue of the tract, by a straight line drawn from letter M. on the south side of the plat, to letter C. on the north side thereof, a distance above six miles, according to Kemper’s plat. They describe this line as running north 3 deg. east, and beginning at a white oak, marked R. C. near Young’s plantation, being a corner tree of the patent, and ending at another white oak, on Piney Branch, another Corner of the patent*
To Mann Page, under whom the defendants claim, they allotted the lot No. 2, on the plat. Separated from the first lot, as described on the plat, by the line M. C. before . mentioned ; and from the third and fourth lots, by a line thus described : “ The dividing line, I. P. N. 80 degrees “ east, begins at a white oak, marked R. C. on a high u bank of the south branch of Bud Pun, and ends at a a xohite oak near Bull Run, in the line M. C. on ac‘ stony hill,” which is accordingly designated in that plat by the letter P. as in the straight line between M* and C.
The point P. thus designated in the plat returned to the General Court, constitutes a corner between lot 1. and lot 2. and between lot 2. and lot 3. The report was-confirmed, and a decree accordingly; the parties, therefore,. became seised in severalty of their respective shares? according to the terms of that decree.
*133 There are two plats of surveys made in this cause ; in rone of which, made by Charles Kemper, there is a straight line drawn from a point A. on the south side of the plat, to a point P. on the north side thereof, a distance of 1,944 poles, (or more than six miles,) without meeting a single marked tree in all that distancce, except one two miles or more from the lands in controversy, where, by the surveyor’s report, he intersected a plain marked line, nearly at right angles (it would appear from the plat) with the line he was then running.
In the other plat, made by Henry D. Hooe, a similar line appears to have been run from the same points, the distance 1,925 poles, and not a line tree discovered in all. that course. By direction of the defendant’s attorney, the surveyor then began at a point marked little red a, 8S poles distant from the beginning of the first mentioned line, and nearly at right angles with it; and, having run the course designated on the plat by the red dotted line, red a, red h, at right angles therewith, and at the distance of eight poles eastward of that point, a stump at red c was shewn him, by two witnesses, on a stony hill, near the south branch of Bull Run, which tree they said they knew when standing, and that it was marked with R. C. In running this line, it appears that, a little on the right hand thereof, designated by the red doited line, red «, red c, they passed a large number of ancient marked trees. From the corner red C. to red F. there is a line of marked trees, corresponding pretty nearly with the dividing line, I. P. reversed in the plat, and report made to the General Court, in the year 1739.
The Court instructed the Jury, that if they were satisfied from the evidence, that the plaintiff’s beginning in the survey made by Kemper at A. was at the same corner of the patent described by John Grant, (whose survey was made the foundation of the decree of the General Court,) at the point marked M. in that survey, and that the termination of that line at P. to run by the plat in Kemper’s sur *134 vey, was at the corner described in Grant’s survey, by the' letter C. the line so run by the plat in the survey in this cause, should be considered as the true dividing line between the parties.
there had been no evidence whatsoever in the cause, by which it had appeared that any line had ever been actually marked from one side of the patented lands to the other, in the direction, or nearly so, with the course laid down in Grant’s survey, which was returned to the General Court, or if no such stony hill near Bull Run could be found, as that mentioned by the commissioners who made the division between the parties, to have been in the line M. C. in the plat returned by them to the General Court, this direction might have been correct. But the termination of the line I. P. (which constituted a corner, not only between the parties in this cause, but between the party under whom the defendant claims, and another joint-tenant, or tenant in common, under the original grant,) being expressly declared to be in the line M. C. and, moreover, to end at a white oak, near Bull Run, and ON A STONY HILL ; those PERMANENT, NATURAL land-marks ought not to have been overlooked or disregarded by the Court in its instruction ; neither ought regular lines of ^marked trees, leading to such a point, and there terminating from different directions, to have been overlooked or disregarded, especially if they should appear to have rus in a manner corresponding in any reasonable degree (of which the Jury were to judge) with the lines expressed in Grant’s survey, and’made the basis of the decree of the General Court.
My opinion, therefore, is, that the judgment be reversed, and a new trial be had, with the following instruction: u- That if, upon such new trial, any instruction to the Jury “ be prayed by either party, the Court ought to instruct n the Jury that, if the Jury shall be satisfied from the evi* m deuce which shall be before them, that the point little n red c in the plat made in this cause by Henry D. Hooe *135 45 surveyor of Prince William County, is the same u with the point P. at a white oak near Cull “ Run, in the line M. C. on a stony hill, (as de- “ scribed in the plat and report made by John Grant, and 44 the commissioners appointed to make a division of the “ lands comprised in a patent granted to London Carter 44 and five others, and returned to the General Court, in the “ year 1739, by whom the same was confirmed and made “ the basis of the decree for a division,) they ought to con-44 sider that point as a corner between the parties, or those u under whom they claim, from which corner other lines, 44 corresponding with the courses mentioned in that plat 44 and report, ought (if necessary) to be drawn, by rever44 sing the courses of the line M. P. and I. P. in Grant’s 11 survey respectively, unless the Jury shall from the evi- “ dunce be further satisfied, that an ancient line, corres44 ponding with the course M. C. in Grant’s survey, has 14 beer, actually run and marked, from the point little red. 14 a (or any other point on that side of the plat, as to the 44 Jury may appear) to the point little red c, in the said 44 Hoods plat described, either by the said commissioners 44 appointed by the General Court as aforesaid, or by the 44 pardes respectively under whom the present parties 44 claim, or their agents authorized for that purpose; in “ which case (if no contravening evidence satisfactory to “ the Jury be offered) they ought to establish the line so 44 proved to have been run and marked, as the true ¡ 44 line between the parties.”
Judge Roane.
The question of boundary in this case, was emphatically proper for the consideration of the Jury; in deciding which they ought to have due regard to all the circumstances shewn in evidence in the cause, and, particularly, to marked lines and reputed boundaries. The cases of Shaw v. Clements,(a) Herbert and wife v. Wise and others,(b) and Baker v. Seckright, Lessee of Glasscock,(c) in this Court, shew the sense of the Court in favour of marked and reputed boundaries, when in oppogi *136 tion to mistaken descriptions in deeds or surveys, or to mere course and distance. It is said in those cases that, in a conflict of the kind, the Juries have very wisely and generally, in this country, disregarded the latter, and adhered to the former criteria, as being more stable and permanent, and less liable to mistakes and misconception. Referring particularly to those cases for the doctrine I mean to adopt on the present occasion, it will be found that the decision in Baker v. Seekright, Lessee of Glasscock, is perhaps a complete authority in opposition to the Instruction of the District Court. In that case, parol evidence was admitted to establish a marked line, which did not correspond with that mentioned in the deed either as to course of distance. It was so admitted, on the ground that the description in the deed may have been piistaken ; whereas the marked and reputed line, being more stable and permanent, ought to prevail, or, at least, be submitted without prejudice to the consideration of the Jury. So, ia the case before us, it is very possible that the surveyor may have erred in his description of the two points beginning and ending the line in controversy ; he may have mistaken this in the fgure. itself, and corrected it (as he seems to have done) in the notes or explanation attached to and made part of his report of the survey. So, also, this possible mistake may perhaps be shewn to have been corrected by him, by actually running and marking the line, claimed by the appellant; at least, however, this is an inquiry proper for the consideration of the Jury.
But the instruction of the District Court does not admit the possibility of a mistake in this respect in the survey ; it is imperious on the Jury, in the event of the two points in Kemper’s survey being proved to correspond with twa in Grant’s survey. That instruction, therefore, omits to give to marked and reputed lines, their due weight with the Jury, according to the uniform decisions of this Court on the subject; it counts as nothing the, various strong circumstances shewn in evidence by the appellant in favour c¡£ *137 ais pretensions, but sets up as infallible, and as outweighnig every thing else, a criterion not entitled under the deeisions of this Court, or the usage of Juries in this country, to such preeminence. In fine, bottoming the instruction upon die mere proof of correspondence as aforesaid, it deprives the Jury of the right to go into the whole evidente, and to give their verdict upon a general consideration thereof.
Such being the character of this instruction, which may have misled the Jury, the verdict ought not to stand. On the new trial to be awarded, if any instruction at all is necessary to be given to the Jury, it should authorize them to take into consideration all the circumstances given in evidence in the cause, and especially the reputed and marked lines proved and relied upon by the appellant.
Judge Fleming.
There being no difference of opinion among the judges as to the merits of the cause, the following is to be entered as the judgment of the Court:
44 This Court is of opinion, that the instruction given 41 to the Jury by the District Court was erroneous; there-44 fore it is considered that the said judgment be reversed, 44 &c. and it is ordered, that the Jury’s verdict be set aside, 44 and that a new trial be had in the cause ; and that, if “ upon such trial, any instruction to the Jury be prayed by either party, the instruction be, that if the Jury shall be, 44 satisfied, from the evidence which shall be before them, 44 that the point, little red c, in the plat made in this cause 44 by Henry D. Ilooe, surveyor of Prince William County, 44 is the same with the point P. at a white oak near Bull 44 Run, in the line M. C. on a stony hill, as described in the 44 pl-at and report, made by John Grant and the commis44 sioners appointed to make a division of the lands com-44 prised in a patent granted to Landon Carter and five others, 44 and returned to the General Court in the year 1739, by “ whom the same was confirmed and made the basis of the 44 decree for the division, they ought to consider that point 44 as a corner between the parties, or those under whom *138 “ they claim, from which corner, other lines correspond- “ ing with the courses mentioned in that plat and report, “ ought (if necessary) to be drawn by reversing the “ courses M, P- and I. P. in Grant’s survey respectively, “ unless the Jury shall, from the evidence, be further sa- “ tisfied, that an ancient line, Corresponding with the line .“ M. C. in Grant’s survey, has been actually run and mark-u ed from the point little red a, (or any other point on that “ side of the plat, as to the Jury may appear,) to the point “ little red c in the said Hooe’s plat described, either by the said Commissioners appointed by the General Court as “ aforesaid, or by the parties respectively under whom the present parties claim, or their agents authorized for that “ purpose, in which case, if no contravening evidence sa- “ tisfactory to the Jury be offered, they ought to establish « the line so proved to have been run and marked as the « true dividing line between the parties.” Which is ordered to be certified, &c.

 See 1 Call, Shaw v. Clements Herbert v. Wise, 3 Call, 239. 1 Hen. & Munf. 177 Baker v. Glasscock.

 1 Call, 429.

 S Call, 259.

 1 Hen. & Munf. 177.